1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSE B. ORTIZ,

11              Plaintiff,                    No. 2:10-cv-1380-MCE-EFB P

12        vs.

13   J. REYNOLDS, et al.,

14              Defendants.              <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16        Plaintiff is a prisoner proceeding without counsel in an action brought under 42 U.S.C.

17   § 1983.  The sole remaining defendant, R. Miranda, has filed a motion for summary judgment.

18   ECF No. 73.  For the reasons explained below, the motion must be granted in part and denied in

19   part.

20   **I.        The Complaint**

21        Plaintiff proceeds on the amended complaint filed on May 16, 2011, in which he asserts

22   that Miranda denied him adequate medical care in a variety of ways.  ECF No. 21 at 3-9.[1]

23   Plaintiff alleges that Miranda is a physician's assistant who is responsible for all inmate medical

24   care at High Desert State Prison ("HDSP") Facility B, where plaintiff is housed.  *Id.* at 2.

25   _____

26        [1] Page numbers cited herein refer to those assigned by the court's electronic docketing
     system and not those assigned by the parties.

Plaintiff claims that in the spring 2008, he was issued a counseling "chrono" for failing to take medication as directed.[2] *Id.* at 3, 25.  Plaintiff suffers from degenerative disc disease and received medication to treat the associated pain. *Id.* at 8.  Plaintiff appealed the chrono, arguing that he could not have committed the infraction because he was on "orientation status" at the time. *Id.* at 3.  Miranda interviewed plaintiff in connection with the appeal on September 25, 2008. *Id.* at 4.  Miranda presented plaintiff with an Opioid Analgesic Treatment Contract and asked plaintiff to sign it, admonishing that "it was the only way plaintiff could continue to receive his pain medication." *Id.* at 4, 21.  Plaintiff was dissatisfied that neither defendant nor any of the other appeals reviewers removed the chrono from his file. *Id.* at 4-5.

In the meantime, plaintiff was informed by a nurse that he had an appointment scheduled for August 28, 2008, but, according to plaintiff, "it never happened." *Id.* at 5.  On September 7, 2008, another nurse told him that the appointment had been rescheduled. *Id.*  On September 14, 2008, plaintiff submitted a second appeal, arguing that he had submitted several healthcare request forms but had not yet seen a doctor. *Id.* at 5 & Ex. B.  In response, an appeal reviewer noted that plaintiff had seen defendant on September 25, 2008 and did not have any scheduled appointments. *Id.*  The reviewer noted that, at the appointment, plaintiff "stated [he] understood the treatment plan and [was] satisfied." *Id.* at 28.  Plaintiff states that the September 25th appointment regarded the earlier appeal and did not address the medical issue for which he currently sought an appointment. *Id.* at 6.  Plaintiff contends that defendant erroneously reported that plaintiff was "satisfied" at the September 25th appointment, and this erroneous information prevented plaintiff from being scheduled for another appointment. *Id.*

On December 1, 2009, defendant presented plaintiff with a new "Pain Management and Controlled Substance Treatment Agreement." *Id.* at 7.  Defendant told plaintiff that if he did not

_____

[2] A "chrono" is an informational memorandum about an inmate authored by prison staff. *Connor v. Cal.*, No. 1:10-cv-01967-AWI-BAM, 2013 U.S. Dist. LEXIS 11207, at *4 n.5 (E.D. Cal. Jan. 28, 2013); *Terrill v. Grannis*, No. 1:11-cv-00118-AWI-SKO PC, 2012 U.S. Dist. LEXIS 167419, at * n.3 (E.D. Cal. Nov. 26, 2012).

1  sign the new agreement, he would arrange to discontinue plaintiff's medication completely.  *Id.*

2  at 8.  In response to plaintiff's request for an increase in his pain medication dosage, defendant

3  stated, "if you would let all the appeals go and not push the issues, I could be more flexible in

4  terms of your treatment options."  *Id.*  Plaintiff signed the agreement.  *Id.*

5        Plaintiff received a renewed prescription for Gabapentin[3] on February 10, 2010.  *Id.*  He

6  received his Gabapentin the following day, but on February 12, 2010, plaintiff was told that the

7  drug "had ran out."  *Id.*  It is not clear from the complaint whether plaintiff received Gabapentin

8  between February 12, 2010 and March 18, 2010.  On the latter date, plaintiff saw defendant, who

9  informed him that "he was taking away [plaintiff's] medication regardless of the need for

10  chronic pain."  *Id.*

11        Plaintiff alleges broadly and without any further specificity that

12        Since September 25, 2008, to present, defendant, R. Miranda, have [sic] repeated
       interferred [sic] with, denied, or delayed performance of medical test [sic] and
13       treatment for plaintiff's medical condition.  Said medical test [sic] include, but are
       not limited to, being seen by a nuerologist [sic], having an MRI done, and other
14       examinations that could have been done by the defendant in the capacity of
       plaintiff's primary care provider (PCP), to properly address the condition and
15       afford plaintiff the proper medical attention that's supposed to be provided under
       the Eighth Amendment of the United States Constitution.

16

17  *Id.* at 8-9.  Plaintiff further alleges that, since September 25, 2008, defendant has subjected him

18  to "hostility and abuse in apparent retaliation for plaintiff's efforts to secure proper medical

19  attention, medical diagnosis, and/or treatment."  *Id.*  Plaintiff claims that defendant coerced him

20  into signing the treatment contracts, submitted a false statement that plaintiff was satisfied with

21  his treatment plan, and discontinued his medication to retaliate against him.  *Id.*

22        Under the heading "Claim for Relief," plaintiff alleges that Miranda's conduct subjected

23  plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.  *Id.* at 10-11.

24  /////

25

26        [3] According to Miranda, Gabapentin is an anti-seizure medication that was sometimes
    prescribed for the off-label use of pain management.  ECF No. 73-4 at ¶ 5.

## II.     Procedural Background

Defendant previously sought summary judgment on August 3, 2012. ECF No. 51. The court granted that motion in part and denied it in part, noting that the motion did not address certain of plaintiff's allegations. ECF Nos. 63, 66. Summary judgment was granted in favor of Miranda on plaintiff's claims that Miranda violated plaintiff's Eighth Amendment rights when he threatened to discontinue plaintiff's pain medication on September 25, 2008 and December 1, 2009. ECF No. 66. In light of the motion not addressing other claims, Miranda was granted leave to file a second motion for summary judgment addressing plaintiff's allegations that:

> (1) Defendant prepared a false record on September 25, 2008 stating that plaintiff was satisfied with his treatment plan, which prevented plaintiff from obtaining a necessary appointment, in violation of the Eighth Amendment;

> (2) Defendant threatened to discontinue plaintiff's medication on September 25, 2008 and December 1, 2009 in retaliation for plaintiff's medical appeals and tried to coerce plaintiff into dropping the appeals in exchange for a higher dose of pain medication; and

> (3) Defendant discontinued plaintiff's pain medication on March 18, 2010 despite plaintiff's need for it, either in violation of the Eighth Amendment or in retaliation for plaintiff's medical appeals.

ECF No. 66. The instant motion addresses those claims. ECF No. 73.

## III.    Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

/////

1    The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

2    or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

3    "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

4    trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

5    (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

6    under summary judgment practice, the moving party bears the initial responsibility of presenting

7    the basis for its motion and identifying those portions of the record, together with affidavits, if

8    any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

9    U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

10   party meets its burden with a properly supported motion, the burden then shifts to the opposing

11   party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

12   *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

13   A clear focus on where the burden of proof lies as to the factual issue in question is

14   crucial to summary judgment procedures.  Depending on which party bears that burden, the party

15   seeking summary judgment does not necessarily need to submit any evidence of its own.  When

16   the opposing party would have the burden of proof on a dispositive issue at trial, the moving

17   party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

18   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

19   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

20   24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

21   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

22   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

23   should be entered, after adequate time for discovery and upon motion, against a party who fails

24   to make a showing sufficient to establish the existence of an element essential to that party's

25   case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

26   circumstance, summary judgment must be granted, "so long as whatever is before the district

1   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

2   satisfied." *Id.* at 323.

3          To defeat summary judgment the opposing party must establish a genuine dispute as to a

4   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

5   that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

6   at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

7   law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

8   material is determined by the substantive law applicable for the claim in question.  *Id.*  If the

9   opposing party is unable to produce evidence sufficient to establish a required element of its

10  claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

11  an essential element of the nonmoving party's case necessarily renders all other facts

12  immaterial."  *Celotex*, 477 U.S. at 322.

13         Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

14  the court must again focus on which party bears the burden of proof on the factual issue in

15  question.  Where the party opposing summary judgment would bear the burden of proof at trial

16  on the factual issue in dispute, that party must produce evidence sufficient to support its factual

17  claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

18  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

19  or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

20  for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

21  demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

22  that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

23  477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

24         The court does not determine witness credibility.  It believes the opposing party's

25  evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

26  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

6

proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with the instant motion, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 73-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## IV.   Analysis

As noted above, there are two possible Eighth Amendment claims and two possible First Amendment retaliation claims remaining in this action.

### A.   Eighth Amendment Claims

The Eighth Amendment to the U.S. Constitution protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to

that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. An officer has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Neither a defendant's negligence nor a plaintiff's general disagreement with the treatment he received suffices to establish deliberate indifference. *Estelle*, 429 U.S. at 106; *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is also insufficient, by itself, to establish deliberate indifference. *Jackson*, 90 F.3d at 332. Rather, the plaintiff must show that the course chosen by the defendant was medically unacceptable under the circumstances and that the defendant was aware of the risk posed by the chosen course. *Jackson*, 90 F.3d at 332; *Farmer*, 511 U.S. at 840.

Here, plaintiff claims that Miranda violated his Eighth Amendment rights by: (1) preparing a false record on September 25, 2008 stating that plaintiff was satisfied with his treatment plan, which prevented plaintiff from obtaining a necessary appointment and (2) discontinuing plaintiff's pain medication on March 18, 2010 despite plaintiff's need for it.

Plaintiff's false record claim is predicated on his contention that his access to medical treatment was delayed by representations by Miranda that were not true. As noted, a delay in the treatment of a serious medical need can violate the Eighth Amendment if it results in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Defendant argues that there is no evidence to show that defendant knew of and disregarded an excessive risk to plaintiff's health by delaying a medical appointment. Rather, defendant argues, the facts show that plaintiff received regular appointments with defendant (about five per year). ECF No. 73-3, Def.'s Stmt. of Undisp. Facts ISO Mot. for Summ. J. (hereinafter "DUF") 11.

1   While plaintiff sometimes had to submit up to three requests for a medical appointment, he

2   would always be seen after the third request.  DUF 12.

3          Plaintiff has not responded to this argument.  Nor has he submitted evidence to support

4   his claim that defendant's statement on September 25, 2008 that plaintiff was satisfied with his

5   treatment plan somehow caused a delay in plaintiff receiving necessary care.  Further, plaintiff

6   has not produced any evidence or argument that defendant knew that this statement would

7   prevent plaintiff from receiving necessary care.  *See* ECF No. 77, Pl.'s Opp'n to Def.'s Mot. for

8   Summ. J.  Accordingly, Miranda is entitled to summary judgment on plaintiff's claim that

9   Miranda caused the delay of a necessary medical appointment on or around September 25, 2008

10  in favor of defendant is warranted.

11         As to plaintiff's second remaining Eighth Amendment claim, defendant argues that there

12  is no evidence to show that defendant discontinued all of plaintiff's pain medication.  Rather,

13  only the medication Gabapentin was discontinued.  DUF 21.  Miranda's declaration explains that

14  Gabapentin was discontinued pursuant to a new prison policy restricting prescriptions for that

15  drug to inmates suffering from specific ailments which plaintiff did not have.  DUF 19-21.

16  Miranda's declaration notes that pain management is an occasional "off-label" use of this anti-

17  seizure medication and that he had determined that was not medically necessary for plaintiff's

18  condition.  Miranda explains that under the new policy this drug was to be used only to treat

19  "partial complex seizures," "post herpetic neuralgia," and "patients with objective evidence of

20  severe disease who are not on opiods with demonstrated benefits."  ECF No. 73-4 at ¶ 5.

21  Miranda continued to provide plaintiff with acetaminophen and Naproxen.  DUF 21.

22         Plaintiff does not dispute that the only medication that defendant discontinued was

23  Gabapentin.  Nor does he dispute that Gabapentin was discontinued pursuant to a new policy.

24  ECF No. 77 at 3.  Nonetheless, he claims that "there was absolutely no need" for defendant to

25  discontinue the Gabapentin, which--according to plaintiff--was the only medication that relieved

26  plaintiff's pain.  *Id.*  Plaintiff claimed in his deposition testimony that defendant had discretion to

1   prescribe Gabapentin to plaintiff despite the policy and that other inmates were still receiving it.

2   Pl.'s Dep. 33:9-21 (ECF No. 74, Notice of Lodging of Deposition Transcript).  While plaintiff is

3   certainly not an authority on the policy, defendant has not provided the court with a copy of the

4   policy or responded to plaintiff's assertion that there remains discretion under the policy to

5   continue a patient on Gabapentin under circumstances like plaintiff's.  The only evidence before

6   the court as to the content of the policy is Miranda's declaration, which cites three conditions for

7   which the drug could still be prescribed.  There appears to be no dispute as to partial complex

8   seizures or post herpetic neuralgia.  Plaintiff does not allege that either pertain to him.  However,

9   plaintiff does contend that Gabapentin is the only medication that relieved his pain from

10  degenerative disc disease.  Although Miranda's declaration states the conclusion that none of the

11  three exceptions apply to plaintiff, the declaration does not discuss how or whether the exception

12  for "objective evidence of severe disease [for patients] who are not on opiods with demonstrated

13  benefits" does or does not relate to plaintiff's pain resulting from degenerative disc disease.

14          Defendant characterizes plaintiff's assertion as a mere difference of opinion between

15  plaintiff and defendant as to the proper course of treatment.  But plaintiff has submitted evidence

16  that he suffered from severe chronic pain which was relieved only by Gabapentin.  Defendant's

17  own description of the policy appears to include an exception for cases of severe disease where

18  the patient is not on opiods but yet the defendant does not explain why this exception would not

19  include plaintiff's pain from degenerative disc disease.  While the record is not clear on the

20  matter, taking the evidence in the light most favorable to plaintiff there is a factual dispute as to

21  whether there is discretion under the policy to continue plaintiff on Gabapentin to treat his pain.

22  If, as plaintiff alleges, Gabapentin was the only medication that relieved the pain the question

23  remains whether it was medically acceptable under the circumstances to have discontinued it,

24  and whether doing so resulted in "the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d

25  at 1096.  Accordingly, triable issues of material fact preclude summary judgment based on the

26  record currently before the court.

1        **B.      Retaliation Claims**

2            To establish liability for violation of the First Amendment via retaliation, a prisoner must

3    show five elements: "(1) An assertion that a state actor took some adverse action against an

4    inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

5    inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

6    legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  The

7    plaintiff need not demonstrate that his speech was actually inhibited or suppressed, but merely

8    that the defendant's conduct was such as would chill or silence a person of ordinary firmness

9    from future First Amendment activities.  *Id.* at 568-69.  Conduct protected by the First

10   Amendment includes communications that are "part of the grievance process."  *Brodheim v. Cry*,

11   584 F.3d 1262, 1271 n.4 (9th Cir. 2009).

12          Plaintiff alleges that defendant violated his First Amendment rights by: (1) threatening to

13   discontinue plaintiff's medication on September 25, 2008 and December 1, 2009 in retaliation

14   for plaintiff's medical appeals and (2) discontinuing plaintiff's pain medication on March 18,

15   2010 despite plaintiff's need for it in retaliation for plaintiff's medical appeals.  As to the first

16   retaliation claim, defendant argues that his alleged conduct on those two dates – telling plaintiff

17   he would discontinue plaintiff's medication if plaintiff did not sign an opioid treatment contract

18   – would not chill or silence a person of ordinary firmness.  The court cannot say as a matter of

19   law that this conduct would not have a chilling effect.  *See Bell v. Johnson*, 308 F.3d 594, 603

20   (6th Cir. 2002) (holding that whether defendant's conduct would chill a person of ordinary

21   firmness is a question of fact for the jury unless the alleged conduct is "inconsequential").

22   Accordingly, defendant has not advanced an argument warranting summary judgment on

23   plaintiff's retaliation claim regarding defendant's alleged threats on September 25, 2008 and

24   December 1, 2009.

25          As to plaintiff's second retaliation claim, defendant argues that the undisputed facts show

26   that defendant did not discontinue plaintiff's Gabapentin on March 18, 2010 to retaliate against

1  plaintiff but rather did so to promote the prison's legitimate interest in reducing the over-

2  prescription of Gabapentin.  DUF 19-21.  While this explanation certainly articulated a

3  legitimate non-retaliatory motive, plaintiff alleges that defendant told him three months earlier

4  that if he would abandon his appeals, defendant "could be more flexible" regarding plaintiff's

5  treatment for pain.  ECF No. 21 at 6.  Presumably, Miranda will deny making the statement but

6  resolving the credibility issue must await trail.  A defendant may not defeat a retaliation claim

7  simply by articulating a legitimate interest where there is a dispute as to whether the defendant

8  was motivated by that interest or by a desire to retaliate.  *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th

9  Cir. 2003).  Plaintiff's allegations that defendant tried to convince plaintiff to abandon his

10  appeals in exchange for pain medication raise a triable issue as to whether defendant's decision

11  to discontinue plaintiff's pain medication was in response to plaintiff's refusal to abandon the

12  appeals or just to further the prison's interest in reducing Gabapentin over-prescription.

13  **V.    Summary**

14      If these findings and recommendations are adopted, the remaining claims to be resolved

15  will be:

16      (1) that defendant violated the Eighth Amendment by discontinuing plaintiff's necessary

17  prescription for Gabapentin on March 18, 2010;

18      (2) that defendant violated the First Amendment by discontinuing plaintiff's necessary

19  plaintiff's necessary prescription for Gabapentin on March 18, 2010 in retaliation for plaintiff's

20  medical appeals against defendant; and

21      (3) that defendant violated the First Amendment by threatening to discontinue plaintiff's

22  prescription for Gabapentin on September 25, 2008 and December 1, 2009 unless plaintiff signed

23  an opioid treatment contract in retaliation for plaintiff's medical appeals against defendant.

24  **VI.    Recommendation**

25      For all of the above reasons, it is recommended that defendant's June 24, 2013 motion for

26  summary judgment (ECF No. 73) be granted in part, as to plaintiff's claim that defendant caused

the delay of a necessary medical appointment on or around September 25, 2008 in violation of the Eighth Amendment, and otherwise denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 24, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE