UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE B. ORTIZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>REYNOLDS et al.,<br><br>　　　　Defendants. | No. 2:10-cv-1380-MCE-EFB P<br><br>ORDER |

Plaintiff is a state prisoner who proceeded without counsel in this action brought under 42 U.S.C. § 1983. The parties agreed to settle all remaining claims on February 22, 2017. ECF No. 163. The case was accordingly dismissed on March 14, 2017. ECF No. 169.

On July 31, 2017, plaintiff submitted a letter to the court complaining that defendants had not complied with the settlement agreement. ECF No. 171.

**I.　Background**

　**A.　The Parties' Settlement**

Plaintiff's underlying claim in this action is that defendant Miranda discontinued and threatened to discontinue plaintiff's prescription for Gabapentin in violation of his First and Eighth Amendments rights. *See* ECF Nos. 80, 85, 121.

A court supervised settlement conference occurred on February 22, 2017. ECF No. 154.

/////

1

On that date, the parties reached a settlement and the terms of their agreement were entered into the record in open court. ECF No. 166. First, the parties stipulated that the CDCR would pay plaintiff $5,500, "obviously with the understanding that [the money would] go towards any restitution [plaintiff might] owe." *Id.* at 6. It was further stipulated that the CDCR would "need a maximum of 180 days to have the money credit to [plaintiff's] restitution account." *Id.* at 10. Second, the parties stipulated that defendants would make a "good faith effort" to find plaintiff a radio to replace one that was taken from him. *Id.* at 7–8. Plaintiff stated on the record that, while the CDCR would make an effort to find him a radio, "there[] [was] no guarantee" that he would receive one. *Id.* at 8. Third, the parties stipulated that the CDCR would ask "the Chief Medial Executive ["CME"] of Pleasant Valley State Prison ["PVSP"] to review plaintiff's medical records and make any appropriate recommendations for [his] ongoing care deemed necessary based on the [CME's] clinical assessment." *Id.* at 5. The request was to be made to the CME at PVSP within seven days of the "signing of the settlement agreement and release" and was to include "a further personal evaluation by a staff physician deemed most appropriate by the [CME]." *Id.* at 5-6.

On March 9, 2017, the parties filed a stipulation of dismissal, ECF No. 168, which the court approved, ECF No. 169. The stipulation of dismissal stated, *inter alia*, that the court "shall retain jurisdiction to enforce the terms of the settlement agreement in accordance with the terms of the Settlement Agreement and Release." ECF No. 168 at 1.

**B.     The Parties' Contentions**

On July 31, 2017, plaintiff filed a letter stating that, despite his signing the settlement agreement on March 8, 2017, "nothing that was stipulated [to] on the record [at the February 22, settlement conference] has been fulfilled." ECF No. 171at 1.

Defendants' response to plaintiff's letter asserts, generally, that they have fulfilled all the terms of the settlement agreement. ECF No. 173. Defendants support their response with the affidavits of certain CDCR officials. Roscoe Barrow is the Chief Counsel for California Correctional Health Care Services. ECF No. 173-4 ¶ 1. Barrow states that, on March 20, 2017, he received the fully executed settlement agreement. *Id.* ¶ 4. He further states that, on the

2

| | |
|---|---|
| 1 | following day, he requested Dr. Onyeje, the CME at PVSP, to complete his medical review |
| 2 | pursuant to the terms of the agreement. *Id.* He also states that, on April 19, 2017, Dr. Onyeje |
| 3 | told him that plaintiff had been transferred to California Correctional Institution ("CCI"), *id.* ¶ 5, |
| 4 | which occurred on February 24, 2017, ECF No. 173-2 ¶ 2. Moreover, Barrow states that, on the |
| 5 | same day, he contacted Dr. Shiesha, the CME at CCI. *Id.* ¶ 6. According to Barrow, Dr. Shiesha |
| 6 | told him that plaintiff had refused an appointment with his primary care physician for a physical |
| 7 | examination. *Id.* Thereafter, Barrow continues, he asked Dr. Shiesha to review plaintiff's file, |
| 8 | make recommendations regarding his care, and document those recommendations. *Id.* Barrow |
| 9 | adds that this review was conducted and that Dr. Shiesha concurred with plaintiff's primary care |
| 10 | physician regarding his care. *Id.* |

M. Dailo is the Litigation Coordinator at CCI. ECF No. 173-2 ¶ 1. Dailo states that plaintiff arrived at CCI on February 24, 2017 and left on April 3, 2017. *Id.* ¶ 2. He further states that, during this time, CDCR officials diligently searched for a radio and, on March 3, 2017, found two radios for him. *Id.* ¶ 3. Dailo also states that, on March 14, 2017, "Receiving and Release" showed plaintiff the radios that were available, but that he refused them because he wanted "a radio from the institution that [allegedly] owe[d] him one." *Id.*

K.D. Geringer is the Litigation Coordinator at PVSP. ECF No. 173-3 ¶ 1. Geringer states that, on March 14, 2017, he was advised that plaintiff refused the above-mentioned radios. *Id.* ¶ 3. He further states that, thereafter, PVSP personnel continued searching for a radio but could not find one. *Id.* He adds that he has "since again checked with Receiving and Release and there are no radios available." *Id.*

Defendants also submitted affidavits from Gabrielle De Santis Nield to support their response. ECF Nos. 173-1, 174. Nield is an attorney for defendant Miranda. ECF No. 173-1 ¶ 1. Nield states that, on June 5, 2017, the State Controller's office issued a $5,238.10 payment that posted to plaintiff's trust account on June 20, 2017 and was applied directly to his restitution. *Id.* ¶ 3. Nield further states that the additional $261.90 of the $5,500 settlement was sent to the Administrative Unit for administrative fees. *Id.* Nield adds that, on August 17, 2017, plaintiff

/////

3

was "fully evaluated and examined by Dr. Ana De La Sierra at the request of Dr. Onyeje." ECF No. 174 ¶ 3.

Plaintiff responds that he never refused an appointment for a physical examination while at CCI. ECF No. 175 at 1. He also disputes that he was given a full examination by Dr. De La Sierra on August 17, 2017. *Id.* at 2. Plaintiff states that she simply asked him a few questions about his chronic back pain and said she would refer him to a neurologist, who he has yet to see. *Id.* Plaintiff also provides a trust account statement from August 9, 2017 that shows no payment of $5,230.10. *Id.* at 5. Lastly, plaintiff disputes that any correctional staff offered him a replacement radio and states that he never refused such. *Id.* at 3-4.

## II. Legal Analysis

### A. Jurisdiction

"Federal courts have no inherent power to enforce settlement agreements entered into by parties litigating before them." *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014) (citation omitted). However, federal courts have ancillary jurisdiction to enforce a settlement agreement if the parties' obligation to comply with the terms of the settlement agreement has been made part of the order of dismissal, such as by a provision retaining jurisdiction over the settlement agreement. *Id.* (bracketing in original) (citation omitted).

Here, the court approved the parties' stipulation, ECF No. 169, which specifically provided that the court would retain jurisdiction to enforce the terms of the settlement agreement, ECF No. 168 at 1. Furthermore, the parties stipulated on the record during the settlement hearing that the court would retain jurisdiction over the agreement. ECF No. 166 at 4–5. Accordingly, the court has ancillary jurisdiction to review defendants' compliance with the agreement.

### B. Discussion

Courts treat settlement agreements as contracts. *Rouser v. White*, 825 F.3d 1076, 1081 (9th Cir. 2016). The court construes plaintiff's letter as a motion to enforce the settlement agreement. Accordingly, the question before the court is whether defendants have substantially complied with the agreement. *Id.* at 1081-82. Defendants have substantially complied if any

/////

4

deviation from the terms of the agreement is unintentional and so minor or trivial as to not substantially defeat the object of the agreement. *Id.* at 1082.

Defendants' evidence shows that they have complied with some of the terms of the settlement agreement. Defendants asked the CME at PVSP, Dr. Onyeje, to review plaintiff's medical records and make any appropriate recommendations. Barrow states that, a day after receiving the fully executed settlement agreement, he asked Dr. Onyeje to complete the agreed-upon medical review. Although Dr. Onyeje did not immediately complete this review, the evidence shows that plaintiff was at CCI, not PVSP, at this time. Subsequently, the CME at CCI, Dr. Shiesha, informed Barrow that plaintiff had refused an appointment with his primary care physician. Dr. Shiesha reviewed plaintiff's file and agreed with his primary care physician regarding his care. Later, Dr. Onyeje performed the records review required by the settlement, and a doctor at PVSP fully examined plaintiff at Dr. Onyeje's request. Plaintiff has not made any argument that Dr. Onyeje's delay has harmed him or defeated the purpose of the settlement agreement. Further, while plaintiff may be unsatisfied with the thoroughness of Dr. La Sierra's exam, the settlement agreement simply provided for "a personal evaluation by a staff physician." ECF No. 166 at 6. He has received that and thus, defendants have substantially complied with this term of the agreement.

The evidence on the remaining terms is subject to some dispute, however. Nields states that the $5,500 payment posted to plaintiff's account on June 20, 2017 and was automatically applied to his restitution (less an administrative fee). But plaintiff has submitted a trust account statement from August 9, 2017 which does not explicitly show this transaction. ECF No. 175 at 5. The statement does show that $5,279.14 has been paid on a restitution order in Court Case No. 0038340, which perhaps includes the $5,238.10 in settlement funds. But the question cannot be resolved on the current record. Accordingly, to resolve this issue, the court instructs defense counsel to provide documentary evidence which explicitly shows the application of the settlement funds to plaintiff's restitution and/or fines and account for any other funds that were withheld, if any.

/////

In addition, the parties dispute whether defendants have made a good faith effort to find plaintiff a radio. Dailo states that CCI officials located plaintiff two radios, but that he refused them. Likewise, Geringer states that, upon learning that plaintiff refused the radios, PVSP officials tried to find him a radio. Although they were unsuccessful, this evidence supports a finding that they in good faith tried to find one for him, which is all the agreement required. Plaintiff, on the other hand, flatly contradicts Dailo's testimony. He states a preference for a "J-Win Radio" such as he owned previously, but says he will "settle for a Super 3" and that there are many such radios at PVSP.

In an effort to avoid calling the parties in to obtain live testimony regarding defendants' efforts to provide plaintiff with a radio and resolve the credibility dispute, the court will direct defendants to, within the time provided by this order, make a further effort to locate a replacement radio. The court notes that defense counsel explicitly stated during the settlement conference that CDCR had raised its financial settlement offer from $5000 to $5500 to resolve the issue regarding the radio but that CDCR would nonetheless attempt to find a replacement. ECF No. 166 at 7-8. On the other hand, the court informed plaintiff at the conference that there was "no guarantee" that he would receive a replacement radio, and plaintiff acknowledged that fact. *Id.* at 8. Thus, plaintiff should be aware that under the terms of the agreement he is not entitled to a radio (much less a radio of his choice) *if* defendants cannot secure one despite a good faith effort to do so.

**III. Order**

For the foregoing reasons, it is HEREBY ORDERED that:

1. Within 30 days of the date of this order, defense counsel shall provide the court with evidence showing explicitly the application of the settlement funds issued in this case to plaintiff's restitution fines;

2. Within 21 days of the date of this order, CDCR shall make a further good faith effort to find a radio to replace plaintiff's "J-Win" radio; and

3. Within 30 days of the date of this order, defense counsel shall inform the court what efforts were made to secure a replacement radio.

6

4. The court will issue a ruling on plaintiff's July 31, 2017 letter (ECF No. 171), construed as a motion to enforce the settlement agreement, upon receiving these submissions from defense counsel.

DATED: October 16, 2017.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE